UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ZENELL WOOD,

                          Petitioner,

         v.

SUPERINTENDENT DALE A. ARTUS,

                        Respondent.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CV-4602 (SJF)

**FILED**
**CLERK**

6/15/2020 3:02 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

FEUERSTEIN, District Judge:

       Zenell Wood ("Wood" or "Petitioner") petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging his 2011 conviction in New York Supreme Court, Suffolk County, whereby he was found guilty of (1) attempted murder in the second degree ("attempted murder") in violation of N.Y. PENAL LAW §§110/125.25; (2) criminal use of a firearm in the first degree in violation of N.Y. PENAL LAW §265.09; and (3) two counts of criminal possession of a weapon in the second degree in violation of N.Y. PENAL LAW §265.03. Petition ("Pet."), Docket Entry ("DE") [1]. For the reasons set forth below, the petition is denied and the case dismissed.

**I. BACKGROUND[1]**

---

[1] The facts are taken from the Petition and underlying record, including the transcripts of the trial proceedings in state court in January and February 2011. The transcript from each trial session begins with page one (1); accordingly the citation will be to the volumes of the trial transcript followed by a colon and the page number therein, for example , TR8:37. The transcript volumes are as follows: 1/20/2011 ("TR1"); 1/21/2011 a.m. session ("TR2"); 1/21/2011 p.m. session ("TR3"); 1/24/2011 a.m. session ("TR4"); 1/24/2011 p.m. session ("TR5"); 1/25/2011 ("TR6"); 1/26/2011 ("TR7"); 1/28/2011 a.m. session ("TR8"); 1/28/2011 p.m. session ("TR9"); 1/31/2011 ("TR10"); and 2/1/2011 ("TR11").

**A. Shooting on November 4, 2008**

The shooting leading to Petitioner's conviction occurred on November 4, 2008 at approximately 8:00 p.m. at the Jerusalem Shopping Center in Coram, New York (the "shopping center"). The shopping center is a strip mall running east to west that faces Middle Country Road, Route 25, to the north across a parking lot. It is bordered on the east side by Erna Drive, and on the west side by Fife Drive. The shopping center had a video surveillance system consisting of eight cameras, located in the front of the building, in the rear the building, and one in the pizzeria. TR1:78-79. The video feeds are hooked up to a DVR system and are recorded continuously. *Id.* at 79. The videos from the night of the shooting were admitted into evidence.

On the evening of the incident, Wood and his girlfriend, Marisa Walker, arrived at the shopping center in a 1999 Chrysler 300 driven by Walker. TR7:78. When they arrived, Walker observed some other cars, but no people in the parking lot. *Id.* at 89. Wood went into the pizzeria located at the west end of the shopping center. Walker testified that Wood exited the pizzeria, then headed towards the deli located at the east end of the shopping center. *Id.* at 79, 80. Walker, who was listening to music in the car and was facing away from the deli, heard people arguing. *Id.* at 79. She got out of the car and saw Wood returning to the car. *Id.* He got in the car, told her to "drive away," and they left, travelling to Wood's mother's home located at 17 Carr Lane. *Id.* at 79-80. Upon viewing the video surveillance tapes, Walker identified the car she was driving pulling up to the stores, and identified Wood getting out of, and back into, that car. *Id.* at 81-82.

Marcellino Castro, an employee at the deli, testified that he was working behind the counter when he heard gunshots. TR9:24. He saw the shooter run away to the left, westbound. *Id.* at 25. Castro recognized the shooting victim as a regular customer, and saw him move, after

2

being shot, around the east end of the building.  He did not see anyone else in the parking lot. *Id.* After the shooting, he saw a motor vehicle pass in front of the store, moving from left to right, but was unsure of the color. *Id.* at 38.

Michael Parrish, the victim of the shooting, testified that he was at the shopping center to buy a couple of things and was in conversation with a person who then shot him four or five times.  TR4:23-24.  He confirmed that the video surveillance tapes showed him getting shot.  *Id.* at 25.  Parish suffered multiple gunshot his chest, buttock, leg and foot. TR9:11.  Doctors did not remove a bullet lodged within a centimeter of Parrish's heart, determining that an attempt to remove it would be more lethal than leaving it and monitoring it.  *Id.* at 19-20,

Various Suffolk County Police officers reported to the scene and gave testimony at trial. The first officer on the scene, Fred Mignone, testified that he found Parrish, lying at the east side of the shopping center along with an unidentified bystander.  TR1:73.  He spoke to the bystander briefly but was treating the victim. *Id.* at 53. Mignone accompanied Parrish in the ambulance to Stony Brook University Hospital.  When Parrish complained that his foot hurt, a paramedic removed Parrish's shoe and a bullet fell out.  Mignon placed into a rubber glove to preserve it. *Id.* at 58.

The lead detective, James Brierton, testified about his investigation at the crime scene on November 4, 2008.  He identified and interviewed various civilians as potential witnesses as follows: Wai "Karen" Wong, the owner of a Chinese restaurant in the shopping center;  Castro from the deli; Hector Torres from the pizzeria; and Vaughn Taylor. TR3:45, 47.  There were no customers in the stores while he was conducting the interviews. *Id.* at 72. He also interviewed two civilians that were not in the parking lot at the time of the shooting; one was behind the stores urinating and one was in an abandoned house on Erna Dr. *Id.* at 67-68.  Karen heard the

3

shooting, looked out of the window and saw a car, which she described as a Honda or Toyota, but did not see the shooter. *Id.* at 75. Torres described a Dodge Stratus. *Id.* at 67. No one at the scene described a Chrysler 300. *Id.* at 67.  Det. Brierton also walked into each store, the parking lot, and the roads at each end of the shopping center looking for evidence.  The only evidence he found was shell casings, a hat, and a cell phone, which items were all recovered. *Id.* at 48.

The bullet recovered from Parrish's shoe and five expended shell casings were determined to have come from the same gun, a .25 caliber weapon, likely a handgun.  TR4:18-20.  There were no latent fingerprints on the shell casings.  TR3:12.  No gun was recovered.

**B. Post-Shooting Investigation**

Det. Brierton continued his investigation on November 5, 2008.  He reviewed the video surveillance footage, compared the vehicle image with Kelley Blue Book photos, and alerted other members of the police department to be on the lookout for a Chrysler 300. TR3:58.  Also on November 5th, he interviewed Parrish at Stony Brook University Hospital. *Id.* at 55.

On November 7, 2008, Officer Frank Nolan was on traffic patrol.  Prior to his shift, he was instructed to be on the lookout for a Chrysler 300, model year approximately 1999. TR3:25-26.  He observed a car matching the description of the suspect vehicle roll through a stop sign and he began to follow it. *Id.* at 22. The driver made a left hand turn cutting off a pickup truck, and Nolan turned on the lights and sirens on his vehicle in pursuit. *Id.* at 26. Walker confirmed that she was driving Wood in the Chrysler 300 when a police officer tried to pull the car over. TR7:82 – 83.  She finally stopped the car in the driveway at 17 Carr Lane, and Nolan pulled in after.  TR3:26, TR7:83.  After Walker's vehicle entered the driveway, the passenger side door opened, and the passenger fled. TR3:27. Walker identified Wood as the passenger and testified that he ran after the car stopped in the driveway.  TR7:84.  Nolan initially pursued Wood until he

fled into the woods, and then returned to the vehicle and Walker.  TR3:28.  Walker was placed

under arrest.  During the pursuit, Nolan saw a baseball cap fall from Wood's head.  *Id.* at 27.

This cap was later retrieved as evidence, TR7:16, 33, and DNA analysis showed a match

between the major component of DNA on the cap and the DNA from a swab taken from Wood.

TR8:26.[2]

     Det. Brierton spoke to Walker on November 7th while she was in custody.  After

speaking to her, he returned to Stony Brook University Hospital to speak to Parrish. TR3:60.

Parrish executed a statement on November 7, 2008 as taken by Brierton.  A redacted version was

admitted into evidence at the trial.[3]  The statement as redacted stated: "I'm currently in Stony

Brook Hospital because I was shot four times on Tuesday night.  Tonight Detective Brierton

came to my room.  The guy who shot me in the shopping center, Route 25 and Erna Drive,

Coram, I now know him to be Zenell Wood."  TR4:39; TR5:20-21.

     After leaving the hospital, Brierton returned to his office and put out a computer message

that Zenell Wood was wanted for the shooting at the shopping center.  TR3:60-61. Wood also

was known by the street name "Banga" and has a "Banga" tattoo on his right forearm. TR10:24.

Suffolk County Police were unable to locate Wood, who was ultimately apprehended in North

Carolina.  TR3:61.

## C.  Jury Selection

     The trial judge, Judge Mark Cohen, used the "jury box" system for jury selection, in

which groups of eighteen (18) potential jurors were randomly called from the venire,

---

[2] Walker's Chrysler 300 was impounded.  Subsequent searches of the vehicle did not discover any evidence relevant to the shooting.  *See, e.g.,* TR10:7, TR10:28-31.

[3] The statement was redacted to remove information indicating that Parrish identified Wood from a photo array presented to him by Det. Brierton.

interviewed, and challenged by the attorneys for cause and/or by exercise of peremptory challenges. The process was repeated until the full jury was empanelled.

During round one, the prosecution exercised six (6) peremptory challenges, including one directed at juror 18, Ms. Rosser, the lone black prospective juror in round one. TRJS1:140.[4] During voir dire, Rosser provided the following information: she had a relative who is an FBI agent; her son was the victim of a shooting for which no one was tried because her son could not positively identify the shooter; she explained that she raised him to know that "if you cannot positively identify someone, then don't do it." *Id.* at 87-90. The prosecution initially challenged Rosser for cause, arguing that since she believed that one should not make an identification unless one is one hundred percent certain, she would hold the prosecution to a higher standard than what is legally required. *Id.* at 138-39. The defense objected to the challenge for cause, and the trial court denied it. *Id.* at 139. The prosecution then exercised a peremptory challenge as to Rosser, to which the defense did not raise objection. *Id.* at 140-41.

In round two, the prosecution utilized additional peremptory challenges, including against Mr. Dalia and Ms. Knib. Defense counsel, noting that defendant is black, asserted *Batson* challenges as to the exercise of peremptory challenges as to both prospective jurors: "[t]hey are both black-Americans. I can recall that he also challenged prospective juror No. 18 yesterday, the only black person on the panel yesterday. . . I seem to see a pattern here excluding black persons in this case." TRJS2:81. The defense withdrew its *Batson* challenge as to Dalia upon hearing the prosecution's race-neutral reason for excluding him from the panel. *Id.* at 83-84. After hearing argument, the trial court granted the defense's *Batson* challenge as to Ms. Knib and seated her on the jury. *Id.* at 86.

---

[4] Citations to the jury selection transcripts are to proceedings held on January 18, 2011 ("TRJS1") and on January 19, 2011 ("TRJS2"), followed by a page citation.

6

Another *Batson* challenge was raised in round three as to prospective juror number 6, Ms. Ranford, who is black.  During voir dire, Ranford, was presented with a hypothetical example of whether she could conclude that a bride and groom had kissed when offered conflicting witness accounts of saying they had kissed two, four, or five times.  Rather than rely on the witness testimony, she stated that she would go to the "source," the bride and groom, "because I don't know what they saw or if they saw anything," TRJS2:157-58.  The prosecution challenged Ranford for cause, arguing that she would not accept "uncontroverted evidence" that the bride and groom kissed without asking the couple themselves and thus she would have to "hear from the defendant himself."  *Id.* at 188.  The prosecution also claimed that Ranford had "scoffed" during his questioning of another prospective juror on the issue of police officer credibility.  *Id.* at 188-89.

The trial court denied the challenge for cause.  When the prosecution exercised a peremptory challenge on Ranford, the defense raised another *Batson* challenge.  TRJS2:189.  The trial court ultimately found the prosecution's explanation to be "satisfactory," determined that defendant failed to carry his burden of discriminatory use of a peremptory challenge, and denied defendant's *Batson* challenge.  *Id.* at 192.  The defense did not note an objection to this ruling nor did it renew its *Batson* challenge as to any peremptory challenges at the close of jury selection.

## D. Relevant Trial Rulings

### 1. Parrish's Testimony and Prior Statement

Parrish testified at trial that while at the shopping center, he was in a conversation with someone who shot him four or five times.  TR4:24.  He was shown the video of the shooting and testified that the person who shot him was not the defendant,  *id.* at 25, and he was "positive"

that Wood did not shoot him.  TR7:62.  Parrish further testified that he knew the person who shot him by a nickname, "Banga," *id.* at 65, and although he acknowledged that Wood goes by that nickname, he was shot by a different Banga whose real name he does not know.  *Id.* at 66.  He admitted that he identified his shooter as "Banga" to detectives at the hospital.  *Id.*

In light of Parrish's statement given to Det. Brierton three days after the shooting in which he stated, *inter alia,* that, regarding the shooter, "I now know him to be Zenell Wood," the prosecution requested a *Sirois* hearing,[5] to address defendant's role, if any, in Parrish's change in testimony.  The hearing was held outside the presence of the jury.  The court found that the prosecution failed in its burden of establishing, by clear and convincing evidence, that Wood was responsible for, or acquiesced in, conduct that intentionally caused Parrish to recant his testimony. TR5:67-69.  Accordingly, the court ruled that Parrish's statement would be offered to the jury for impeachment purposes only.  *Id.* at 69.[6]  The redacted statement from Parrish dated November 7, 2008 was admitted into evidence with the instruction that it was to be considered "only for the purpose of impeaching the credibility of this witness on the stand right now with respect to his testimony, on the subject of his testimony.  This statement does not constitute evidence in chief."  *Id.* at 21.  Parrish testified that he was drowsy and tired when he gave the statement.  TR7:62.

---

[5] In New York criminal cases, a *Sirois* hearing may be held to "determine whether the defendant has procured a witness's absence or unavailability through his own misconduct, and thereby forfeited any hearsay or Confrontation Clause objections to admitting the witness's out-of-court statements."  *Cotto v. Herbert,* 331 F.3d 217, 225-26 (2d Cir. 2003) (citing *People v. Geraci,* 85 N.Y.2d 359, 649 N.E.2d 817, 625 N.Y.S.2d 469 (1995)).

[6] As the prosecution was having difficulty securing the attendance of Ms. Walker to testify at trial, the court also heard testimony and received evidence at the *Sirois* hearing regarding any role Wood may have had in her reluctance to appear. The court did not issue a ruling as to Walker because she appeared and testified.

## 2.  Admission of Audio Tape Recordings

Six audio recordings of telephone conversations were admitted into evidence at trial.[7] The calls were made using a PIN number assigned to Wood.  TR10:43.  The male voice on the calls was identified as Wood's, *id.* at 28, 34, and the female voice was identified as Walker's.  *Id.* at 34.  The calls took place between March 28, 2010 and January 2, 2011. *Id.* at 42.  In the conversations,[8]  Wood repeatedly accuses Walker of ratting on him.  *See, e.g.,* Tr. Conv. of 3/28/10 ("You wrote a statement against me and ratted on me"); Tr. Conv. of 11/22/10 ("Make sure I'll mail your statements by tomorrow, too, and make copies of this and show everybody you ratted on me, you laugh, I am dead ass serious, I'm gonna see if you like that, since you don't wanna listen to me, everybody see that you are a fuckin rat").  He also directs Walker not to appear in court.  *See, e.g.,* Tr. Conv. 1/1/11 ("Alright listen, I start my trial on the 10th, whatever the case may be whatever happens make sure you do not come to court.  No matter what, do not come to court, you hear me."); Tr. Conv. 1/2/11 ("Don't be nervous Ma, it's going to be alright.  We ain't gotta be nervous Ma, you know, just, don't cooperate, don't say nothing, don't come to court, don't do nothing, just relax. Alright?"); *cf.* Tr. Conv. 11/17/10 ("if they don't subpoena you to go to court then I guess don't come but if they subpoena you, you come").

The trial court admitted the redacted tape recordings, over defendant's objection, finding the excerpted conversations to be "wholly probative of consciousness of guilt [as] defendant attempted to render Marisa Walker unavailable to be a witness in the trial or by means of aggressiveness, threats to publish her cooperation with the authorities or coerce to change her

---

[7] The calls were placed from the Suffolk County Correctional Facility in Riverhead, but the jury was not advised of this fact.

[8] Copies of the tapes have not been included in the record provided to the court, and the trial transcripts do not include transcripts of the conversations.  The citations to the conversationss are to copies of the transcripts that were attached as exhibits to Wood's appellate brief.

testimony with a favorable version or to absent herself." TR9:48. The court ruled that "the statements are not hearsay since they are not being offered for the truth of the matter asserted, they go to the state of mind of the defendant." *Id.* at 51. At defense counsel's request, a limiting instruction was not given at the time the tape recordings were played for the jury, TR10:54, but instructed the jury on consciousness of guilt as part of its instructions at the conclusion of the trial. TR11:65-66.

### E. Verdict and Sentencing

Wood was found guilty of all four counts. *See* Tr. 2/2/11. He was sentenced to concurrent sentences, the longest of which was twenty (20) years imprisonment along with five (5) years post-release supervision on the attempted murder charge. *See* Tr. 3/23/11.

### F. Direct Appeal

Petitioner filed a Notice of Appeal of his conviction, and his appellate counsel filed Petitioner's appellate brief in the Supreme Court of the State of New York, Appellate Division, Second Department. *See* Pet., Appellant's Brief ("App. Brief"). On direct appeal, Wood raised the following issues: (1) violation of his rights under the Equal Protection Clause of the Constitution in regards to jury selection in that (a) the actions of the prosecutor established a pattern of excluding black jurors from the jury and (b) the trial court failed to apply a more restrictive analysis to the 'race neutral' reasons advanced by the People regarding peremptory challenges; (2) violation of the Sixth Amendment right to confrontation by allowing Det. Brierton to give hearsay testimony that Parrish had identified Wood as the shooter; (3) violation of the Sixth Amendment right to confrontation by permitting the People to introduce recorded conversations between Wood and Walker after her testimony was completed and she was no longer available for cross-examination; (4) the People failed to prove Wood guilty beyond a

reasonable doubt and the verdict was against the weight of the evidence; and (5) the sentence was excessive.

The Appellate Division affirmed the judgment of conviction in a decision dated May 14, 2014. *People v. Wood,* 117 A.D.3d 888, 888, 985 N.Y.S.2d 724 (2d Dep't 2014). As to the jury selection issues, the court found that the prosecutor provided a race-neutral reason for challenging prospective juror number 6 in round three and that defendant failed to demonstrate that the proferred explanation was pretextual, and that the challenge to the prosecutor's use of a peremptory challenge in the first round of selection as to juror number 18 was unpreserved, and "in any event, without merit." *Id.* 888. The appellate court further found that the telephone conversations were properly admitted as that evidence "constituted consciousness of guilt," and that there is no merit to the claim that admission of this evidence violated the confrontation clause. *Id.* The evidence was found to be legally sufficient to establish Wood's guilty beyond a reasonable doubt, the verdict was not against the weight of the evidence, and the sentence imposed was found to be "not excessive. *Id.* at 889. Finally, the appellate court found Wood's remaining contentions to be "unpreserved for appellate review and, in any event, without merit. *Id.*

Petitioner's request for leave to appeal to the New York Court of Appeals was denied October 3, 2014. He did not file a petition for certiorari with the United States Supreme Court, nor has he filed a motion for relief under section 440.10 of the New York Criminal Procedure Law or requested a writ of error *coram nobis.*

## G.  Habeas Petition

Wood's habeas petition sets forth three (3) grounds for relief:  (1) a *Batson* challenge claiming that he was denied a fair trial by the state's systematic exclusion of prospective black

jurors; (2) ineffective assistance of counsel by (a) trial counsel's failure to "seek out and prepare any witnesses, alibi or not, for defense" and to conduct an investigation or present a defense and (b) appellate counsel's failure to raise an ineffective assistance of trial counsel on appeal; and (3) the trial court erred in allowing Det. Brierton to give hearsay testimony that Parrish had identified Wood as the shooter.  In addition to the three grounds identified in the petition, Wood attached the appellate brief that includes three additional claims:  (1) the playing of the recorded conversations between Wood and Walker after the latter had completed her testimony constituted a violation of his Sixth Amendment right to confront the witness; (2) the verdict was legally insufficient; and (3) the sentence was harsh and excessive.  The Respondent has submitted arguments as to all the claims.[9]

## II.  LEGAL STANDARDS

### A.  Standard of Review

"It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).  Pursuant to 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas court considering a claim that was decided on the merits in a state court proceeding may grant relief only if the state court's decision was "(1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. §2254(d).  A state court decision is considered "contrary to" federal law if it either "applies a rule that contradicts the governing law set forth in [the Supreme Court's]

---

[9] In light of Wood's *pro se* status, the Court construes all the claims as included in this petition.

cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor,* 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).   "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (alteration in original) (quoting *Williams,* 529 U.S. at 412).   An "unreasonable application" of federal law occurs where the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams,* 529 U.S. at 407-08.   These requirements are strictly construed and by design "erect[] a formidable barrier to federal habeas relief," *Burt v. Titlow,* 571 U.S. 12, 19, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013), founded upon the principle that "[s]tate courts are adequate forums for the vindication of federal rights" and are "presumptively competent[] to adjudicate claims arising under the laws of the United States." *Id.*   (internal quotation marks and citation omitted).

A habeas petition will not be reviewed by the district court unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (internal quotation marks and citation omitted; alteration in original).   Merely passing through the state courts is not sufficient.   The state courts must have had "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding" for there to have been exhaustion of state remedies, and therefore a state prisoner must "present the state courts with the same claim he urges upon the federal courts." *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct.

509, 30 L. Ed. 2d 438 (1971); *see also Jones v. Keane*, 329 F.3d 290, 294–95 (2d Cir. 2003) ("A petitioner has fairly presented his claim only if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court" (internal quotation marks and citation omitted)).  "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye v. Attorney Gen'l, State of New York,* 696 F.2d 186, 191 (2d Cir. 1982).

Where a petition asserts both exhausted and unexhausted claims, it is deemed a mixed petition.  *See Rhines v. Weber,* 544 U.S. 269, 271, -- 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005). When faced with a mixed petition, the court may (1) dismiss the petition; (2) in its discretion and in limited circumstances, stay the proceedings and hold the petition in abeyance to allow the petitioner to return to state courts to exhaust his unexhausted claims, assuming that a viable avenue for exhaustion exists; or (3) deny the entire petition on the merits if it finds that the unexhausted claims are plainly without merit.  *See id.*, 544 U.S. at 277-78; 28 U.S.C. §2254(b)(2).  Petitioner has raised claims of ineffective assistance of counsel by both his trial and appellate counsel.  As will be discussed below, those claims are unexhausted and thus the filing constitutes a mixed petition.

**B. Procedural Bar**

A federal court "may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis, --* U.S. --, 137 S. Ct. 2058, 2064, 198 L. Ed. 2d 603 (2017); *see also Jimenez v. Walker*, 458 F.3d 130, 136 (2d Cir. 2006) ("federal courts may not review the judgment of a state court that 'rests on a state-law ground that is both 'independent' of the merits

of the federal claim and an 'adequate' basis for the court's decision'" (quoting *Harris v. Reed*,

489 U.S. 255, 260, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989))).  This principle serves to "ensure

that state-court judgments are accorded the finality and respect necessary to preserve the

integrity of legal proceedings within our system of federalism."  *Martinez v. Ryan*, 566 U.S. 1, 9,

132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012).   "The bar applies 'even where the state court has also

ruled in the alternative on the merits of the federal claim.'"  *Nowakowski v. New York,* No. 13

CV 3709, 2018 WL 6421056, at *6 (E.D.N.Y. Dec. 6, 2018) (internal quotation marks and

citation omitted); *see also Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 810  n.4 (2d Cir.

2000) ("where a state court says that a claim is 'not preserved for appellate review' and then

ruled 'in any event' on the merits, such a claim is not preserved").

Notwithstanding the existence of a procedural bar to a claim under state rules, "a federal

court may still review the claim on the merits [1] if the petitioner can demonstrate both cause for

the default and resulting prejudice, or [2] if he can demonstrate that the failure to consider the

claim will result in a miscarriage of justice." *Petronio v. Walsh*, 736 F. Supp. 2d 640, 654

(E.D.N.Y. 2010) (citing *Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S. Ct. 2546, 115

L. Ed. 2d 640 (1991)).  As to the cause and resulting prejudice avenue, "[c]ause may be

demonstrated with "a showing that the factual or legal basis for a claim was not reasonably

available to counsel, ... or that 'some interference by state officials' made compliance

impracticable, ... [or that] the procedural default is the result of ineffective assistance of

counsel." *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (quoting *Murray v. Carrier*, 477

U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986) (citations omitted)).  Although

ineffective assistance of counsel may, in some circumstances, constitute cause for a default, the

claim for ineffective assistance "generally must 'be presented to the state courts as an

independent claim before it may be used to establish cause for a procedural default.'" *Edwards v. Carpenter,* 529 U.S. 446, 452, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000) (quoting *Murray,* 477 U.S. at 489); *see also Pitre v. Griffin,* No. 16 Civ. 6258, 2016 WL 7442653, at *11 (E.D.N.Y. Dec. 26, 2016) ("the ineffective assistance claim must itself have been exhausted in the state court.").

"The miscarriage of justice exception is concerned with actual as compared to legal innocence." *Calderon v. Thompson,* 523 U.S. 538, 559, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998) (internal quotation marks and citation omitted).   Petitioner makes no claim of actual innocence, nor does the record support any such argument.   Accordingly, any analysis of whether Petitioner has overcome a procedural bar will be limited to the cause and resulting prejudice exception.

## III.  DISCUSSION

### A.  Unexhausted Claims

Petitioner asserts claims of ineffective assistance of counsel, contending that trial counsel failed to investigate or interview witnesses, and failed to put on a defense.  He further argues that appellate counsel was ineffective for failing to raise the above claims regarding trial counsel in the direct appeal.  These claims have not been exhausted as he failed to raise them on direct appeal, and they may not be "deemed" exhausted because he has remedies available in state court, to wit, a motion to vacate judgment under CPL §440.10 and a petition for a writ of error *coram nobis* as to his claim involving appellate counsel.

Although Petitioner's ineffective assistance of counsel claims are unexhausted, this Court may review them if they are "plainly meritless."  The Court finds that despite Petitioner's failure

to exhaust these claims, they are plainly meritless and are dismissed pursuant to 28 U.S.C. §2254(b)(2).

To establish an ineffective assistance of counsel claim, a petitioner must demonstrate (1) that counsel's performance "fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S. Ct 2052, 80 L. Ed. 2d 674 (1984). Although a petitioner must satisfy both *Strickland* prongs, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.,* at 697. "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir. 2001).

Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690. As to the deficiency prong, the inquiry "must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. The "court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct" and must "determine whether the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.

Even if a petitioner overcomes the presumption of adequate representation, he must still prove prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A

17

reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.,* and it "requires a substantial, not just conceivable likelihood of a different result." *Cullen v. Pinholster,* 563 U.S.170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (internal quotation marks and citation omitted).

Wood claims that his trial counsel was inadequate for failing to investigate and "seek out and prepare any witnesses, alibi or not, for defense." Pet. at 7.  "While failure to conduct adequate pre-trial investigation may serve as the basis for a claim of ineffective assistance of counsel under *Strickland, see* 466 U.S. at 690-91, a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation." *Taylor v. Poole,* No., 2009 WL 2634724, at *14 (S.D.N.Y. Aug. 27, 2009); *see also Polanco v. United States,* No. 99 Civ. 5739, 2000 WL 1072303, at *10 (S.D.N.Y. Aug. 3, 2000) ("undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either *Strickland* prong"(collecting cases)).  To the contrary, "[a] petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Halo v. United States,* No. 06 CV 5041, 2007 WL 1299158, at *13 (E.D.N.Y. Apr. 30, 2007) (internal quotation marks and citation omitted).  The only example of this failure offered by Petitioner is that  "[t]here were store owners or workers at the shopping center and none of them described a Chrysler 300." Pet. at 7.  No further identification of these witnesses or the value of their purported testimony is offered.  As such, the claim is vague, conclusory and does not merit relief on this petition. *See generally Sloane v. Rock,* No. 09 Civ. 5923, 2011 WL 2020573, at *7 (S.D.N.Y. Apr. 6, 2011) ("Petitioner's conclusory assertion that

18

his trial counsel failed to interview an unidentified witness is not enough to support an ineffective assistance of counsel claim"), *adopted by* 2011 WL 2070754 (S.D.N.Y. May 19, 2011); *Velazquez v. Poole,* 614 F. Supp. 2d 284, 341 (E.D.N.Y. 2007) ("Petitioner's vague and unsupported allegations concerning counsel's 'duty to make [a] reasonable investigation,' [and] counsel's failure to 'investigate the state's case' . . . do not merit *habeas* relief"); *Skeete v. New York*, No. 03-CV-2903, 2003 WL 22709079, at * (E.D.N.Y. Nov. 17, 2003) ("vague, conclusory and unsupported claims do not advance a viable claim for *habeas corpus* relief").

The only fact he alleges that should have been uncovered or revealed is that certain store owners did not identify the Chrysler 300 as being present the night of the shooting. Testimony on this very point was adduced at trial, however, as one store owner described seeing a Dodge Stratus, another described a Honda or Toyota, and no one described a Chrysler 300. TR3:67. Additional testimony from witnesses who did not see a Chrysler 300 would be cumulative at best. *See generally Edwards v. Rock,* No. 09-CV-1387, 2013 WL 80176, at *14 (E.D.N.Y. Jan. 7, 2013) (petitioner failed to demonstrate prejudice resulting from counsel's failure to call alleged alibi witnesses were he "failed to provide an affidavit from these witnesses to corroborate his conclusory assertion of what their testimony would have been"); *Schulz v. Marshall,* 528 F. Supp. 2d 77, 96 n.13 (E.D.N.Y. Nov. 19, 2007) ("In evaluating claims of ineffective assistance of counsel based on failure to investigate witnesses, courts place weight on a defendant's ability to show that these witnesses would have had helpful information" (collecting cases)), *aff'd* 345 F. App'x 627 (2d Cir. 2009). Furthermore, Walker unequivocally testified that she was in the parking lot the night of the shooting and that she was driving a Chrysler 300.

Petitioner's conclusory, general claim that his counsel failed to put on a defense fares no better as he does not identify specific witnesses or evidence which was not produced, or describe

19

how the outcome would have changed.  *See Sturdivant v. Barkley,* No. 04-CV-5659, 2007 WL 2126093, at \*7 (E.D.N.Y. July 24, 2007) (finding "petitioner's self-serving and conclusory allegation that defense counsel failed to present witnesses is insufficient to establish ineffective assistance of counsel" where petitioner "gives no indication as to which witnesses counsel should have presented, much less how any of these unidentified individuals would have changed the result of the proceeding").  Generally, "complaints of uncalled witnesses are not favored in federal habeas review, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Hodges v. Bezio,* No. 09-CV-3402, 2012 WL 607659, at \*10 (E.D.N.Y. Feb. 24, 2012) (internal quotation marks and citation omitted).[10]

Wood also contends that his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel on direct appeal.  Pet. at 8.  The *Strickland* test also applies to claims regarding the effectiveness of appellate counsel.  *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994); *Dominique v. Artus,* 25 F. Supp. 3d 321, 337 (E.D.N.Y. 2004).  It is clear, however, that "there can be no claim of ineffective assistance of appellate counsel where the underlying claims of ineffective assistance of trial counsel are themselves meritless," *Rolling v. Fischer,* 433 F. Supp. 2d 336, 351 (S.D.N.Y. 2006), because appellate counsel does not have an obligation to raise claims that clearly lack merit.  *See Aparicio v. Artuz,* 269 F.3d 78, 99 (2d Cir. 2001) ("The failure to include a meritless argument [on appeal] does not fall outside the

---

[10] In his reply, Petitioner puts forth a further basis for his ineffective assistance of counsel claim, stating that if he had effective trial counsel, "the case against petitioner would have ended when the respondent did not prove their burden at the 'SIROIS' hearing.' Reply at ¶4.  Petitioner misunderstands the scope of that ruling.  The court ruled that the government did not carry its burden of proving that Wood had in some manner forced Parrish to recant, and thus Parrish's statement identifying Wood as the shooter could be used only to impeach Parrish.  This ruling had no bearing the prosecution's ultimate burden of proving Wood's guilt beyond a reasonable doubt.

'wide range of professionally competent assistance' to which Petitioner was entitled" (quoting *Strickland,* 466 U.S. at 690)).  In his reply, Wood makes the conclusory, self-serving claim that appellate counsel's performance was ineffective because he "omitted significant and obvious issues and submitted weaker issues."  Reply ¶ 6.  His failure to identify any such issue is fatal to his claim.

**B. Exhausted Claims**

    1. Jury Selection and *Batson* Challenges

    The Supreme Court in *Batson* held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's [constitutional] right to equal protection because it denies him the protection that a trial by jury is intended to secure."  *Batson v. Kentucky,* 476 U.S. 79, 86, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).  The Court established a three-part test to be used in determining whether a peremptory challenge was made in a discriminatory manner.  First, the party opposing the peremptory challenge must make a prima facie showing the challenge was exercised on the basis of race. *See Hernandez v. New York,* 500 U.S. 352, 358-59, 111 S. Ct. 1859, 114 L. Ed. 22d 395 (1991) (citing *Batson,* 476 U.S. at 96-98).  If the requisite showing is made, the burden shifts to the challenged party "to articulate a race-neutral explanation for striking the jurors in question." *Id.*   "This second step in the *Batson* inquiry does not mandate an explanation that is persuasive or even plausible."  *Overton v. Newton,* 295 F.3d 270, 276 (2d Cir. 2002) (citing *Purkett v. Elem,* 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995)).  "Finally, the trial court must determine whether the [party asserting the *Batson* challenge] has carried his burden of proving purposeful discrimination." *Hernandez,* 500 U.S. at 358-59 (citing *Batson,* 476 U.S. at 96-98).  "It is not until the *third* step that the persuasiveness of the justification becomes relevant--the step in which the trial court determines whether the opponent

of the strike has carried his burden of proving purposeful discrimination." *Purkett,* 514 U.S. at 768 (emphasis in original); *see also Messiah v. Duncan,* 435 F.3d 186, 195 (2d Cir. 2006) ("Throughout the *Batson* procedure, the burden of proving that a strike was exercised on an impermissible discriminatory ground remains with the movant").

In the context of review of a *Batson* challenge raised in a habeas petition, "a trial court's conclusion that a peremptory challenge was not exercised in a discriminatory manner is entitled to a presumption of correctness, except, *inter alia,* to the extent that the trial court did not resolve the factual issues involved in the challenge or if the finding is not fairly supported by the record." *Galarza v. Keane,* 252 F.3d 630, 635 (2d Cir. 2001). The Second Circuit has noted that while conducting a direct appellate review of a *Batson* ruling, "we generally afford great deference to a district court's determination of discriminatory intent," *Watson v. Ricks,* 427 F. App'x 60, 61 (2d Cir. 2011) (internal quotation marks and citation omitted), and "[w]hen a state court's *Batson* ruling is challenged under §2254, our review is further limited [by the AEDPA], under which we will not identify constitutional error unless the record 'compel[s] the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications.'" *Id.* (quoting *Rice v. Collins,* 646 U.S. 333, 341, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006)).

   *a.   Prospective Juror Number 6, Round 3*

In asserting the challenge as to Ranford, defense contended that "there appears to be a pattern with all the black jurors," TRJS2:189. Although the trial court did not expressly rule that defendant had established a prima facie case of discrimination based on this assertion, the judge immediately asked the prosecutor to state his reasons for exercising the peremptory challenge. *Id.* The prosecutor offered two reasons: (1) her inability to accept a scenario with uncontroverted evidence of a fact; and (2) that she "scoffed" and made a face when another

22

prospective juror indicated he would give a police officer's tesimony more credibility.   *Id.* at 188-89.

      After hearing the prosecution's reasons, the trial court asked defendant if he had "anything to offer" with respect to his *Batson* challenge.   TRJS2:190.   Counsel responded that the prosecution had challenged four prospective black jurors, *id.* at 190, and that Ranford "seems to be fair in all."   *Id.*   As to her statements implying that she may require direct proof, defense counsel argued that she had not received any instructions from the court regarding circumstantial evidence.   *Id.* at 191. Defense counsel further stated that he did not hear a scoff, and that she had commented that anyone can be untruthful.   *Id.*   He concluded that he thinks she was challenged because "she's a black woman and not any of those other reasons."   *Id.*

      The trial court's determination was not an unreasonable application of clearly established federal law; to the contrary, the trial court applied the proper *Batson* analysis with respect to the challenged juror.   The trial judge, having presided over the proceedings and having given counsel for both sides time and opportunity to be heard, expressly found that defendant had failed to carry his burden of establishing that the use of the peremptory was discriminatory, found the prosecution's explanation to be satisfactory, and then denied the *Batson* challenge. TRJS2:192.   To the extent the trial court made credibility determinations implicit in its decision, those determinations are not properly reviewed as part of the habeas analysis.   *See, e.g., Rice,* 546 U.S. at 341-42 ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").   Based on a review of the record, the Court concludes that the explanations proffered by the prosecution were racially neutral, and finds the trial court's ruling

that there was no discriminatory intent to be a reasonable determination of the facts in light of the evidence presented.

   b.   *Prospective Juror Number 18, Round 1*

Petitioner also contests the prosecution's use of a peremptory challenge to excuse Rosser, prospective juror number 18 in the first round, claiming that this exercise also ran afoul of *Batson*.  The Appellate Division found that any challenge as to the prosecution's use of a peremptory challenge as to Rosser, was unpreserved for appellate review "and, in any event, without merit." *Wood,* 117 A.D.3d at 888.  Pursuant to New York's "contemporary objection rule," the state's appellate courts "will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings." *Downs v. Lapel*, 657 F.3d 97, 103 (2d Cir. 2011); *see also* N.Y. CRIM. PROC. LAW §470.05(2).  The Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule," *Downs,* 657 F.3d at 104, that is "sufficient to invoke the 'independent and adequate state law ground' bar" to federal habeas review. *Nowakowski,* 2018 WL 6421056, at *6 (quoting *Richardson v. Greene,* 497 F.3d 212, 217-18 (2d Cir. 2007)).  The appellate court's reference to an alternative, merits-based determination does not lift the procedural bar to review of this claim. *See Fama,* 235 F.3d at 810 n.4 (2d Cir. 2000) ("where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved").

As the Appellate Division's decision regarding any *Batson* challenge to Rosser rested on an independent and adequate state ground, that claim is procedurally barred from federal habeas review unless Petitioner can demonstrate cause for the default and resulting prejudice. He has not attempted to show cause for the default or prejudice, and none is apparent on the record.  Even if

Petitioner's generalized claim regarding effectiveness of trial counsel could be construed as relating to this unpreserved claim, it cannot be a basis for establishing cause for his default since he failed to exhaust his ineffective assistance of counsel claim in state court. *See Edwards,* 529 U.S. at 452.

### 2. Admission of Det. Brierton Testimony

Petitioner claims that Det. Brierton gave hearsay testimony that Parrish had identified Wood as the shooter in violation of his Sixth Amendment rights. This claim rests upon testimony during the direct examination of Brierton, which was given prior to Parrish's testimony:

> Q:  Did you speak with Mr. Parrish?
>
> A:  I took another statement from Mr. Parrish in which he identified the shooter who shot him.
>
> Defense Counsel: Objection, Your Honor.
>
> The Court:  Sustained.  The jury will disregard the last statement.
>
> Q:  After speaking with Mr. Parrish, what did you do?
>
> A:  I went to my office, continued to put out a computer message about the person and the identity of the person who was wanted for the shooting at the shopping center.
>
> Q:  Did you yourself look for anybody as part of this investigation?
>
> A:  Yes, sir.
>
> Q:  Who were you looking for?
>
> A:  Zenell Wood.

TR3:60-61.  The defense did not raise any additional objection.  On appeal, Wood characterized the witness's use of his name as testimonial, hearsay evidence because the prosecutor was

permitted "to identify the defendant as the person identified by the victim as the shooter." App. Brief at 40.

Petitioner raised this claim during his direct appeal, but the Appellate Division did not specifically analyze it. Instead, it found that Wood's "remaining contentions are unpreserved for appellate review and, in any event, without merit." *Wood,* 117 A.D.3d at 888. The appellate court's reference to "remaining contentions" includes this claim, as the use of this language encompasses any claim presented to the court but not directly addressed in its decision. *See, e.g., Maddox v. Clinton Corr. Facility,* No. 13 Civ. 4268, 2016 WL 7388646, at *4 & n.2 (S.D.N.Y. Nov. 23, 2016) (claim procedurally barred since Appellate Division reference to "remaining contentions" raised but not addressed directly "certainly included this claim"), *adopted by* 2016 WL 7378973 (S.D.N.Y. Dec. 20, 2016); *Ellis v. Miller*, No. 97-cv-7049, 1998 WL 812664, at *5 n.5 (E.D.N.Y. Aug. 3, 1998) (finding claim procedurally barred where the Appellate Division did not address a claim directly "and therefore it was included among petitioner's 'remaining' claims that were not preserved for appellate review").

As discussed above, a failure to properly preserve an issue is an independent and adequate state ground that creates a procedural bar to federal habeas relief. Petitioner has again failed to allege any cause whatsoever for his failure to raise this issue and thus cannot overcome the procedural bar to review.

### 3. Admission of the Recorded Conversations

Petitioner contends that the admission of the recorded conversations between himself and Walker after Walker had completed her testimony violated the Confrontation Clause of the Sixth Amendment since she was no longer available for cross-examination. Appellate Division found that the recorded conversations between Wood and Walker were properly admitted "as that

26

evidence constituted consciousness of guilt," *Wood,* 117 A.D.3d at 889, and that Wood's right of confrontation was not violated.  *Id.* (citing *Crawford v. Washington,* 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)).

The recordings were admitted as pertaining to the state of mind of the defendant, an exception to hearsay. As they were not testimonial, the Confrontation Clause was not implicated. *See generally U.S. v. Dinero Express, Inc.,* 57 F. App'x 456, 460 (2d Cir. 2002) (no Confrontation Clause violation where tape recordings were admitted "solely to place [defendant's] own recorded statements in context and not for the truth of the matters asserted, [and] the informant's credibility was simply irrelevant").   The Appellate Division properly denied Petitioner's appeal, and as such, its decision was not contrary to or an unreasonable application of clearly established Supreme Court law.

4.  Legal Sufficiency of the Evidence

A legal insufficiency claim rests upon due process principles established by the Fourteenth Amendment.  *See e.g., Soberanis v. Brown*, No. 10-CV-2695, 2014 WL 5038364, at *8 (S.D.N.Y. Sept. 30, 2014) ("The due process guaranteed by the Fourteenth Amendment provides that no person shall be convicted of a crime except upon sufficient proof").  A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden," *Ponnapula,* 297 F.3d at 179,  and is only entitled to relief if, "based upon the evidence adduced at trial, no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Glover v. Portuondo*, No. 96 CIV. 7616, 1999 WL 349936, at *7 (S.D.N.Y. May 28, 1999).  Such a challenge "does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in original) (internal

quotation marks and citation omitted).  Rather, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

The Appellate Division determined that, viewing the evidence in the light most favorable to the prosecution, "it was legally sufficient to establish the defendant's guilty beyond a reasonable doubt." *Wood,* 117 A.D.3d at 888.  Petitioner's argument as raised on direct appeal relies upon Parrish's testimony that Wood was not the shooter.  Parrish's testimony was subject to impeachment by use of his prior inconsistent statement.  Furthermore, there was ample, independent evidence regarding Wood's presence at the time and place of the shooting, and additional evidence of his consciousness of guilt. In short, there was sufficient evidence for a rational jury to determine Petitioner's guilt beyond a reasonable doubt, and therefore Petitioner is not entitled to habeas relief on this basis.

### 5.  Excessive Sentence

As the Second Circuit has instructed, "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir. 1992).  Petitioner was found guilty on four counts, the most serious of which, attempted murder in the second degree, carries a maximum term of twenty-five (25) years.  N.Y. PENAL LAW §70(2)(b). The sentence imposed by the trial court, twenty (20) years along with five (5) years post-release supervision, falls within the range authorized by New York law and *habeas* relief is unwarranted.

## IV.  CONCLUSION

For all the foregoing reasons, the petition for a writ of habeas corpus is denied and the

proceeding is dismissed in its entirety.  The Court declines to issue a certificate of appealability because Wood has not "made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(1); *see also Miller–El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *Contino v. United States*, 535 F.3d 124, 127 (2d Cir.2 008).  Petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253.  The Clerk of Court is directed to close the case.

**SO ORDERED**.

_/s/ Sandra J. Feuerstein_
Sandra J. Feuerstein
United States District Judge

Dated: Central Islip, New York
        June 15, 2020